UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-223(DSD/FLN)

United States of America,

       Plaintiff,

v.                                                              **ORDER**

Thomas Edward Rosensteel, II(1),
Robert Scott Aslesen(2),
Justin Joseph Christenson(3),

       Defendants.

This matter is before the court upon the appeal by the government of the January 7, 2015, order compelling disclosure and upon the objection by defendants[1] to the January 9, 2015, report and recommendation.[2] Based on a review of the file, record, and proceedings herein, and for the following reasons, the court affirms the order in part, overrules the objections, and adopts the report and recommendation in its entirety.

**BACKGROUND**

On July 9, 2014, defendants were indicted on eight counts of wire fraud and one count of conspiracy to commit wire fraud. ECF No. 1. The indictment alleges that defendants engaged in a scheme

---

[1] Defendants include Thomas Edward Rosensteel, II, Robert Scott Aslesen, and Justin Joseph Christenson.

[2] The order and report and recommendation were issued by the Honorable Franklin L. Noel, Magistrate Judge, United States District Court for the District of Minnesota.

to defraud mortgage lenders from July 2006 to October 2007.  Id. According to the indictment, defendants recruited buyers to apply for mortgage loans, promising that they would receive money in return after the transactions closed.  Id. ¶¶ 8-9.  Defendants then caused false documents to be submitted to lenders and concealed the kickback payments that they received from the fraudulently inflated loans.  Id. ¶ 12.

The indictment contains the following materiality allegation, which relates to documents submitted to the lenders:

> The false representations and concealed true facts were material to the mortgage lenders financing the transactions in that, among other things, they prevented them from calculating the true loan-to-value ratios, assessing the true equity stake of the buyers, and determining the true credit risk associated with the transactions.

Id. ¶ 17.  The indictment lists eight wire transfers allegedly made from Washington Mutual Bank (WaMu) to companies run by defendants. Id. ¶ 20.

Defendants seek the disclosure of documents pertaining to a Department of Justice investigation into WaMu and other lenders acquired by JP Morgan Chase.  That investigation led to a civil settlement (Settlement Agreement).  See ECF No. 67-1.  In the Settlement Agreement, WaMu admitted to the following:

> WaMu did not disclose to securitization investors ... the information from its internal reviews concerning instances of borrower fraud and misrepresentations regarding borrower credit, compliance, and property valuation, in the origination of loans, including as to loans that were sold into securitizations. WaMu also did

2

>  not disclose to investors information regarding instances
>  of fraudulent and/or poor underwriting by certain non-
>  WaMu loan originators who sold loans to WaMu ....

Id. at 32-33.  Specifically, defendants request a report authored by Clayton Holdings, Inc., referenced in the Settlement Agreement, that defendants argue has exculpatory information regarding the Settlement Agreements' findings (Clayton Report).  Defendants likewise request all information in the DOJ's possession discovered during its litigation against WaMu.[3]

Defendants also seek the disclosure of witness statements made in preparation of a 2007 joint report between the DOJ and the Federal Trade Commission (DOJ-FTC Report).[4]  Defendants argue that these statements will show that the DOJ previously approved of "buyer rebates," a practice that they claim is now challenged in the indictment.  On January 7, 2015, the magistrate judge issued an order granting defendants' request in part.  The order required disclosure of the Clayton Report and "[w]itness statements made in 2007 and possessed by the Department of Justice that buyer rebates were permitted and in fact aided the consumer."  ECF No. 82, at 6.

---

[3] The magistrate judge did not order the disclosure of the WaMu litigation discovery.  Defendants untimely objected to that limitation on their disclosure request.  See ECF No. 94, at 1.  The court will nevertheless consider the objection.

[4] The report is not included in the record, but is found at http://www.ftc.gov/reports/competition-real-estate-brokerage-industry-report-federal-trade-commission-us-department

3

In addition to the order compelling disclosure, the magistrate judge issued a report and recommendation on January 9, 2015. ECF No. 85. The magistrate judge recommended that the court deny defendant Rosensteel's motion to exclude evidence of a consent order entered into between Rosensteel and the Minnesota Department of Commerce (MN-DOC). The consent order was issued on August 24, 2009. ECF No. 95-1. The order revoked certain real estate licenses belonging to Rosensteel and his company Split Rock Realty, LLC. Id. The consent order found Rosensteel in violation of Minnesota statutes prohibiting untrustworthy, false, and deceptive practices. Id. at 3. The allegations included in the consent order closely parallel the indictment allegations, and they pertain to the same underlying fraud scheme. By signing the order, Rosensteel admitted that its factual statements were true. Id. at 5. The government now appeals the disclosure order, and Rosensteel objects to the report and recommendation.

**DISCUSSION**

**I. Disclosure of Exculpatory Evidence**

When a magistrate judge issues an order in a nondispositive matter, the court may reconsider and must modify or set aside "any part of the order that is clearly erroneous or contrary to law." Fed. R. Crim. P. 59(a); see 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a). The government appeals the magistrate judge's order

requiring the disclosure of the Clayton Report and the 2007 witness statements regarding buyer rebates.

Due process requires prosecutors to disclose favorable evidence that is material to the guilt or punishment of a defendant. Brady v. Maryland, 373 U.S. 83, 87 (1963). To show a Brady violation, a defendant "must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." United States v. Barraza Cazares, 465 F.3d 327, 333 (8th Cir. 2006). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 334 (internal quotation marks omitted).

**A.  The Clayton Report and WaMu Litigation Documents**

To establish guilt of wire fraud, the government must show, in part, that defendants participated "in a scheme to defraud." United States v. Rice, 699 F.3d 1043, 1047 (8th Cir. 2012). Any false representation made by a defendant pursuant to that scheme must be "material." See Neder v. United States, 527 U.S. 1, 20 (1999). Defendants argue that the Clayton Report and documents discovered during the WaMu litigation show that WaMu engaged in fraudulent underwriting, and as a result, any representations made by defendants could not be material. The court disagrees.

Materiality under the wire fraud statute is judged by an objective standard. See Neder, 527 U.S. at 22 n.5. "The materiality inquiry focuses on whether the false statement had a natural tendency to influence or was capable of influencing the [financial institution]." United States v. Rashid, 383 F.3d 769, 778 (8th Cir. 2004). As a result, even if defendants show that WaMu was not actually deceived in approving their applications, this is irrelevant to establish materiality. See id. ("Materiality does not require proof that the [financial institution] actually relied on the statement."). Other courts have denied similar Brady requests for the same reason. See United States v. Kuzmenko, No. 2:11-CR-210, 2014 WL 7140640, at *5-6 (E.D. Cal. Dec. 12, 2014); United States v. Lito, No. 2:12-cr-175, 2014 WL 2216096, at *3-6 (N.D. Ind. May 28, 2014); Pantoja v. United States, No. 13 Civ. 2781, 2013 WL 3990912, at *5-6 (E.D.N.Y. Aug. 2, 2013).[5]

Defendants further argue, however, that the requested information will be used to impeach statements to be made at trial regarding WaMu's underwriting. "Impeachment evidence is within the Brady rule." United States v. Sheffield, 55 F.3d 341, 343 (8th Cir. 1995) (citing Giglio v. United States, 405 U.S. 150 (1972)).

---

[5] Defendants also argue that the documents will show that WaMu was in effect a co-conspirator because it admitted to selling fraudulent loans. Again, whether WaMu was fraudulent is irrelevant for purposes of establishing defendants' liability under the federal wire fraud statute.

Such evidence, however, remains subject to the materiality requirement of Brady.  See id.  As stated, a global inquiry into WaMu's poor and fraudulent underwriting is irrelevant to the materiality of defendants' representations relating to their specific loans.  Refusing disclosure of this information would not be material to defendants' guilt and would not "undermine confidence in the outcome" of the trial.  See id. (citing Pennsylvania v. Ritchie, 480 U.S. 39 (1987)).[5]

### B.   Interviews Regarding Buyer Rebates

Defendants next argue that the witness statements regarding buyer rebates must be disclosed because they show that the DOJ at one time approved of the practices alleged in the indictment.  The government responds that the statements likely do not exist, and even if they did, the government cannot be required to conduct a global search to uncover potentially favorable information of which it is not aware.  The court agrees.

The prosecution "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case." Kyles v. Whitley, 514 U.S. 419, 437 (1995).  This does not require, however, the government to "discover information not in its

---

[5] Nor would the information be relevant to show loss for purposes of sentencing, as defendants allege.  If defendants wish to show that the loss caused by their alleged conduct is due in part to WaMu's own fraud, they may make an appropriate request at sentencing in the event of a conviction. That request would in any event likely be limited to the transactions at issue here.

possession or of which it was not aware." United States v. Heppner, 519 F.3d 744, 750 (8th Cir. 2008). As stated by the government, the DOJ-FTC Report is based on information and opinions provided at a public workshop held in 2005, as well as existing literature and studies. DOJ-FTC Report, at 2. The report also did "not draw on any non-public information gathered during investigations conducted by the FTC or DOJ or obtained through litigation brought by the Agencies." Id. at 2 n.8. To the extent that such interviews do exist, the fact that they were requested by defendants does not mean that the government must now try to unearth them. See United States v. Tierney, 947 F.2d 854 (8th Cir. 1991) ("[E]ven if the defendant has requested evidence from the government, the government has no affirmative duty to disclose evidence where, as here, it is not aware of the evidence, and the evidence is readily accessible to the defendant.").

Moreover, the Eighth Circuit has not expressly defined the extent to which a prosecutor must search for exculpatory evidence at other agencies or in other jurisdictions. Courts that have considered the issue, however, hold that there is no obligation to "learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." United States v. Merlino, 349 F.3d 144, 154 (3d Cir. 2003) (quoting United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996)); see also United States v. Stuart, 923 F.2d 607, 612 (8th Cir. 1991)

(noting that there is "no duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence" (internal quotation marks omitted)). To the extent the interviews exist, the prosecution neither has knowledge nor possession of them. As a result, they are not subject to disclosure under Brady.

**II. Objection to the Report and Recommendation**

The court reviews the report and recommendation of the magistrate judge de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b). Rosensteel moves to exclude the MN-DOC consent order, arguing that it is inadmissible under Federal Rule of Evidence 408. Rule 408 generally excludes evidence of conduct and statements made during compromise offers and negotiations, except "when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority." Fed. R. Evid. 408(a)(2).

Rosensteel argues that the consent order is inadmissible to show liability. Specifically, Rosensteel argues that the order pertains to civil liability under state law, not criminal liability under federal wiretapping statutes, and that admitting it would be unfairly prejudicial and would violate public policy. The court disagrees.

The text of Rule 408, which expressly allows for the admission in criminal cases of statements made to government agencies, does

not support Rosensteel's suggested prohibition. See Fed. R. Evid. 408 advisory committee's notes ("There is no absolute exclusion imposed by Rule 408."); see also United States v. Gannaway, 477 Fed. App'x 618, 622 (11th Cir. 2012) (finding that admissions of civil liability under the Clean Air Act "were relevant to proving various counts of the indictment"). Moreover, the fact that these statements tend to prove liability does not make them unfairly prejudicial. See United States v. Muhlenbruch, 634 F.3d 987, 1001 (8th Cir. 2011) ("Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning."). Finally, it is true that admitting evidence of an "offer or acceptance could deter a defendant from settling," and is therefore arguably against public policy. See Fed. R. Evid. 408 advisory committee's notes. The rule recognizes this however, and "distinguishes statements and conduct (such as a direct admission of fault) ... from an offer or acceptance of a compromise." Id. Here, the allegations included in the consent order pertain to evidence of Rosensteel's statements and conduct. Because they were made to a public agency and are now being offered in a criminal case, they are admissible under Rule 408. As a result, the objection is overruled.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that

1. Defendants' objections [ECF No. 94] to the magistrate judge's report and recommendation are overruled;

2. Defendant Aslesen's motion to suppress search and seizure evidence [ECF No. 53] is denied;

3. Defendant Rosensteel's motion to suppress and exclude his consent order [ECF No. 63] is denied;

4. Defendant Christenson's motion to suppress and exclude his consent order [ECF No. 64] is denied as moot;

5. Defendant Rosensteel's motion to suppress search and seizure evidence [ECF No. 72] is denied;

6. The government's appeal [ECF No. 87] of the magistrate judge's order on motion for release of Brady materials is sustained;

7. The magistrate judge's report and recommendation [ECF No. 85] is adopted in its entirety; and

8. The magistrate judge's order [ECF No. 82] on motion for release of Brady materials is affirmed in part, as set forth above.

Dated:  January 29, 2015

s/David S. Doty
David S. Doty, Judge
United States District Court